# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

**REALTIME DATA LLC d/b/a IXO**

**v.**

**CARBONITE, INC., et al.**

**CASE NO. 6:17-cv-00121**

**PATENT CASE**

## CARBONITE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

I.     Introduction ...................................................................................................................1

II.    Background ....................................................................................................................4

       A.     The Asserted Patents .........................................................................................4

              1.     The '728 Patent ......................................................................................4

              2.     The '530 Patent ......................................................................................5

              3.     The '908 Patent ......................................................................................6

              4.     The '204 Patent ......................................................................................7

III.   Legal Standard ..............................................................................................................7

       A.     This Case Should Be Disposed of at the Pleading Stage through Rule 12(b)(6).....7

       B.     The Law of 35 U.S.C. § 101. .............................................................................9

IV.    Argument .....................................................................................................................11

       A.     Realtime Can No Longer Feign the Need for Claim Construction.......................11

       B.     Step One: The Asserted Patents Are Directed to an Abstract Idea.......................17

              1.     Being Limited to the Digital Domain Does Not Save the Asserted Patents.19

              2.     The Claimed Functions/Results Do Not Save the Asserted Patents. .........21

       C.     Step Two: There is No "Inventive Concept." ....................................................22

       D.     The Remaining Independent and Dependent Claims are Ineligible for the Same
              Reasons. ..........................................................................................................24

V.     Conclusion ..................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016).................................................................................4, 22, 25

*Alice Corp. Pty. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014).........................................................9, 10, 17, 20, 21, 23, 26

*Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016)....................................................................................17

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)..........................................................................21, 22, 27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................8

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016).....................................................................................24

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) (en banc), *aff'd, Bilski v. Kappos*, 130 S. Ct.
  3218 (2010).............................................................................................................8, 9, 10

*Cardpool Inc. v. Plastic Jungle, Inc.*,
  No. C. 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) ................................9

*Clear with Computers, LLC v. Altec Inds., Inc.*,
  No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...................................9

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*,
  21 F. Supp. 3d 758, 764, 766-67 (E.D. Tex. 2014) (Davis, J.) ................................9

*Cogent Med., Inc. v. Elsevier, Inc.*,
  70 F. Supp. 3d 1058 (N.D. Cal. 2014) ......................................................................9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).....................................................................................24

*Cuvillier v. Sullivan*,
  503 F.3d 397 (5th Cir. 2007) ........................................................................................8

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)....................................................................................10

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)..........................................................................1, 19, 20, 21

*Dealertrack, Inc. v. Huber*,
    554 F.3d 1315 (Fed. Cir. 2012).............................................................................................8

*Diamond v. Chakrabarty*,
    447 U.S. 303 (1980)................................................................................................................9

*Diamond v. Diehr*,
    450 U.S. 175 (1981)..............................................................................................................10

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014).............................................................................................2

*Eclipse IP LLC v. McKinley Equip. Corp.*,
    No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)....................................9

*Electric Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)...................................................3, 4, 11, 17, 18, 22, 24, 26, 27

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...........................................................................................10

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)...........................................................................................11

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)...........................................................................................11

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*,
    No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) .....................................9

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)................................................................................................................9

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)......................................................................2, 3, 18, 20, 28

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)...........................................................................................26

*Internet Patents Corp. v. Active Network*, *Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)...........................................................................................22

*Landmark Technology, LLC v. Assurant, Inc.*,
    No. 6:15-cv-76, 2015 WL 4388311 (E.D. Tex. July 14, 2015) ..............................................9

*Lovelace v. Software Spectrum*,
    78 F.3d 1015 (5th Cir. 1996) ...................................................................................8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012) ......................................................................10, 11, 17, 23

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016)...............................................................................21

*My Health, Inc. v. Devilbiss Healthcare, LLC*,
    EDTX Case No. 2:16-cv-00535, Dkt. No. 66 (February 14, 2017 Report and
    Recommendation) .................................................................................................17

*O'Reilly v. Morse*,
    56 U.S. 62 (1853)...................................................................................................9

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    No. C-12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ..............................9

*Open Text S.A. v. Alfresco Software Ltd.*,
    No. 13-cv-04843, 2014 WL 4684429 (C.D. Cal. Sept. 19, 2014) ...........................9

*Parker v. Flook*,
    437 U.S. 584 (1978).............................................................................................10

*Planet Bingo, LLC v. VKGS LLC*,
    576 Fed. Appx. 1005 (Fed. Cir. 2014) ..................................................................10

*Realtime Data, LLC v. Actian Corp., et al.*,
    EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28 Memorandum Opinion
    and Order) .......................................................................11, 12, 13, 16

*Realtime Data LLC v. Actian Corporation, et al.*,
    EDTX Case No. 6:15-cv-00463, Dkt. Nos. 76, 157 ..........................................1, 16

*Realtime Data LLC v. Dell Inc., et al.*,
    EDTX Case No. 6:16-cv-00089, Dkt. Nos. 70, 81 ..............................1, 12, 14, 15

*Realtime Data, LLC v. Oracle America, Inc., et al.*,
    EDTX Case No. 6:16-cv-88, Dkt. No. 83 (October 28 Memorandum Opinion
    and Order) ......................................................................................14, 16

*Realtime Data LLC v. Rackspace USA, Inc. et al.*,
    EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim
    Construction Chart)...............................................................13, 14, 15

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    2017 WL 1521590 (Fed. Cir. Apr. 28, 2017) ..................2, 3, 11, 17, 18, 20, 21, 28

*Rubber-Tip Pencil Co. v. Howard*,
   87 U.S. 498 (1874)......................................................................................................9

*In re TLI Communications LLC Patent Litigation*,
   823 F.3d 607 (Fed. Cir. 2016).............................................................19, 20, 23, 24

*Tuxis Techs., LLC v. Amazon.com, Inc.*,
   No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014)...............................9

*UbiComm, LLC v. Zappos IP, Inc.*,
   No. 13-1029, 2013 WL 6019203 (D. Del. Nov. 13, 2013)......................................9

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)...................................8, 9, 26

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
   635 F. App'x 914 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2390 (2016)..............21

## Federal Statutes

35 U.S.C. § 101............................................................................................... *passim*

I.   **INTRODUCTION**

Defendant Carbonite brings this motion because it believes the time is ripe for the Court

to invalidate the Asserted Patents[1] in this case under § 101.[2]

In 2015, in response to other defendants' § 101 motions filed on two of the Asserted

Patents (the '530 and '908 Patents), Realtime argued that the patents were limited to the digital

domain and thus "necessarily rooted in computer technology" and eligible under *DDR Holdings,*

*LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).[3] *See generally Realtime Data*

*LLC v. Actian Corporation, et al.*, EDTX Case No. 6:15-cv-00463, Dkt. Nos. 76, 157. The Court

concluded that Realtime's argument raised issues of claim scope that made it premature to

dispositively rule on those § 101 motions. *See id.*, at Dkt. Nos. 184, 226.

But the Asserted Patents themselves make clear that digital data was widely known and

used as a form of representing information. *See, e.g.*, '728 Patent, col. 1, ll. 39-41 ("Information

may be represented in a variety of manners. Discrete information such as text and numbers are

*easily represented in digital data*.").[4] And any argument that a claim on digital technology is

necessarily §101-eligible would be particularly striking and mistaken given the numerous

Federal Circuit decisions that have rendered ineligible claims focused on digital information.

Putting aside for now the discussion of why digital data compression is not a non-abstract

or inventive concept in the context of § 101, the Court since the above-mentioned § 101

proceedings in 2015 has issued *Markman* orders setting the scope of the claims. Moreover,

---

[1] U.S. Patent Nos. 7,415,530, 8,717,204, 9,054,728, and 9,116,908.

[2] Pursuant to Local Rule CV-7(g), Carbonite requests an oral hearing on this motion.

[3] In response to another set of Rule 12(b)(6) / § 101 motions, Realtime filed amended complaints to moot those motions in apparent attempt to avoid having to submit a substantive response. *Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. Nos. 70, 81.

[4] All emphasis added unless otherwise noted.

Realtime has taken concrete claim construction positions, where those positions almost universally reject the imposition of meaningful or specific limitations on claim scope. Realtime's positions bear out competing approaches on claim scope on one hand in advancing its infringement allegations against a broad swath of defendants, and on the other in feigning pursuit of limited claim scope in hope to stave off a § 101 ineligibility decision – *e.g.*, Realtime ardently contending that "data" means "digital data" to avoid ineligibility but then later broadly construing "data" as "a representation of information." Realtime should not be allowed to continue to have it both ways. Plainly, Realtime cannot genuinely argue that there are unresolved issues of claim scope for § 101 purposes.

At bottom, the claims of the Asserted Patents are directed to manipulating information, namely encoding/compressing and decoding/decompressing data. Encoding and decoding is an abstract idea as the Federal Circuit made clear in a recent precedential decision:

> We find that claim 1 is directed to the abstract idea of encoding and decoding image data. It claims a method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes. *See* J.A. 35 (col. 1 ll. 23–40). ***This method reflects standard encoding and decoding, an abstract concept long utilized to transmit information. Cf.*** *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and **manipulating data encoded for** human- and **machine-readability is directed to an abstract concept**).

*RecogniCorp, LLC v. Nintendo Co., Ltd.*, 2017 WL 1521590, at *3 (Fed. Cir. Apr. 28, 2017); *id.* at *4 ("A process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea.") (citing *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)). Realtime has steadfastly resisted attempts to limit the encoding/decoding language recited in the claims of the Asserted Patents to any non-standard or particular form (or even to aspects of embodiments described in the specifications). Without such limitations, the Asserted Patents themselves make clear in background that

content-independent and content-dependent compression were well-known, conventional and thus abstract concepts. *See, e.g.*, '728 Patent, col. 2, ll. 1-3 ("***Data compression is widely used*** to reduce the amount of data required to process, transmit, or store a given quantity of information."); col. 3, ll. 1-2 ("***there are many conventional content dependent techniques*** that may be utilized"). Moreover, the storage, transmission, or retrieval of encoded data, without more, is abstract, and as the Federal Circuit has stated "***[a]dding one abstract idea [ ] to another abstract idea (encoding and decoding) does not render the claim non-abstract***." *RecogniCorp, LLC,* 2017 WL 1521590, at *3.

To the extent Realtime argues that analysis of data for content-dependent compression confers eligibility, the Federal Circuit has made clear that "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (citations omitted).

Furthermore, the claims of the Asserted Patents recite no more than generic computing elements – such as "processor" and "memory device" – and do not advance any inventive concept. Should Realtime aver that §101 patentability rests on compression and storage/transmission occurring faster than storage/transmission in uncompressed form, that is merely function unsupported by any inventive detail recited in the claims. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) (hereinafter "*Intellectual Ventures*") ("Indeed, the claim language here provides only a result-oriented solution, with insufficient detail for how a computer accomplishes it. Our law demands more."); *see also Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("[T]he claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem."), petition

for cert. filed (U.S. Feb. 28, 2017) (No. 16-1047); *Electric Power Grp.*, 830 F.3d at 1351 ("Though lengthy and numerous, the claims do not go beyond . . . stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology. The claims, defining a desirable information-based result and not limited to inventive means of achieving the result, fail under § 101."). Realtime cannot simply claim an aspirational function or result without reciting supporting technical means and then conveniently argue that the claim escapes § 101 ineligibility because of that unsupported function.

Accordingly, and for the reasons detailed below, Carbonite respectfully requests that the Court dismiss Realtime's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) as a result of the Asserted Patents being directed to ineligible subject matter under 35 U.S.C. § 101.

## II.   BACKGROUND

### A.   The Asserted Patents

On February 27, 2017, Realtime Data LLC filed this lawsuit against Carbonite, Inc., specifically identifying the following claims as allegedly infringed: claim 1 of the '728 Patent; claim 1 of the '530 Patent; claim 1 of the '908 Patent; and claim 12 of the '204 Patent. *See* Dkt. No. 1, ¶¶ 12, 42, 74, and 96.

Carbonite is aware that the Court is well-familiar with the technology described and claimed in the Asserted Patents as a result of the Court presiding through the years over numerous other cases brought by Realtime. Thus, to be concise, this motion does not belabor the subject matter of the Asserted Patents, but does provide the following brief summary.

### 1.   *The '728 Patent*

U.S. Patent No. 9,054,728, entitled "Data Compression Systems and Methods," focuses on using a combination of content-independent data compression and content-dependent data

compression. *See, e.g.*, '728 Patent, col. 1, ll. 34-37; col. 3, ll. 59-62. Asserted claim 1 of the

'728 Patent recites:

> 1. A system for compressing data comprising;
>
> a processor;
>
> one or more content dependent data compression encoders; and
>
> a single data compression encoder;
>
> wherein the processor is configured:
>
>> to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one or more parameters or attributes of the data within the data block;
>>
>> to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and
>>
>> to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified.

### 2.    *The '530 Patent*

U.S. Patent No. 7,415,530, entitled "System and Methods for Accelerated Data Storage

and Retrieval," focuses on "a data accelerator" that compresses two data blocks using different

techniques and stores the compressed data "faster" than the uncompressed data can be stored.

Asserted claim 1 of the '530 Patent recites:

> 1. A system comprising:
>
> a memory device; and
>
> a data accelerator,
>
>> wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression

> techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block.

Notably, the claim does not recite any specific compression technique or specify how "said first and second compression techniques are different." Nor does the claim recite any support for how the "faster than" objective is achieved.

### 3.    The '908 Patent

U.S. Patent No. 9,116,908, entitled "System and Methods for Accelerated Data Storage and Retrieval," is related to and shares a common specification with the '530 Patent. The '908 Patent focuses on "a data accelerator" like in the '530 Patent. Asserted claim 1 of the '908 Patent recites:

> 1. A system comprising:
>
> a memory device; and
>
> a data accelerator configured to compress:
>
>> (i) a first data block with a first compression technique to provide a first compressed data block; and
>>
>> (ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block;
>>
>> wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form.

Again, the claim does not recite any specific compression technique or specify how the "second compression technique [is] different from the first compression technique." Nor does the claim recite any support for how the "faster than" objective is achieved.

#### 4.     *The '204 Patent*

U.S. Patent No. 8,717,204, entitled "Methods for Encoding and Decoding Data," focuses on content-dependent compression and transmission that occurs faster than transmission in uncompressed form. Asserted claim 12 of the '204 Patent recites:

> 12. A method for processing data, the data residing in data fields, comprising:
>
> recognizing any characteristic, attribute, or parameter of the data;
>
> selecting an encoder associated with the recognized characteristic, attribute, or parameter of the data;
>
> compressing the data with the selected encoder utilizing at least one state machine to provide compressed data having a compression ratio of over 4:1; and
>
> point-to-point transmitting the compressed data to a client;
>
> wherein the compressing and the transmitting occur over a period of time which is less than a time to transmit the data in an uncompressed form.

Notably, the recited 4:1+ compression ratio is merely a function or result as the claim recites no limits, let alone inventive limits, on how to achieve or support that compression ratio. Nor does the claim recite any support for how the "wherein" clause is achieved.

Realtime's Complaint in no way alleges that the claimed subject matter of the Asserted Patents is directed to a specific or non-conventional mechanism for achieving data encoding/decoding, or to an unconventional improvement of a computer, or is limited in any other manner. Merely performing non-specific data compression "faster" or at a particular compression ratio, without anything more, is not an inventive mechanism that can withstand a § 101 challenge.

### III.   LEGAL STANDARD

#### A.     This Case Should Be Disposed of at the Pleading Stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint "must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996). Although factual allegations are taken as true, legal conclusions are given no deference – those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier*, 503 F.3d at 401 (internal citations and quotations omitted). Thus, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 709, 718 (Fed. Cir. 2014) (Mayer, J., concurring).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (en banc), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Patent eligibility is evaluated from the perspective of the claims. *Dealertrack, Inc. v. Huber*, 554 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). To be actionable, a patent's claims must be drawn to patent-eligible subject matter under § 101. *Bilski*, 545 F.3d at 950. Accordingly, the § 101 inquiry is properly raised on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Ultramercial*, 772 F.3d at 713, 717 (affirming grant of "pre-answer motion to dismiss under Rule 12(b)(6) without formally construing the

claims").[5]

**B.     The Law of 35 U.S.C. § 101.**

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any

new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. In

addition, the law recognizes three exceptions to patent eligibility: "laws of nature, physical

phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). Abstract

ideas are ineligible for patent protection because a monopoly over such ideas would preempt

their use in all fields. *See Bilski*, 130 S. Ct. at 3231. "[T]hey are the basic tools of scientific and

technological work." *Id.* at 3255 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). An

abstract idea is just an "idea of itself," than a specific machine or method that makes use of the

idea. *Alice*, 134 S. Ct. at 2355 (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507

(1874)). It is a goal or principle, divorced from the process or machine for how to achieve that

goal or how to apply that principle to a new end. *See, e.g.*, *O'Reilly v. Morse*, 56 U.S. 62, 113

(1853) (finding claim for electromagnetic telegraph ineligible where, in the claim, "it matters not

by what process or machinery the result is accomplished").

Determining whether a patent claim impermissibly claims an abstract idea involves two

---

[5] *See also Landmark Technology, LLC v. Assurant, Inc.*, No. 6:15-cv-76, 2015 WL 4388311 (E.D. Tex. July 14, 2015) (recommending grant of Rule 12(b)(6) motion); *Clear with Computers, LLC v. Altec Inds., Inc.*, No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) (granting Rule 12(b)(6) motion); *Cogent Med., Inc. v. Elsevier, Inc.*, 70 F. Supp. 3d 1058 (N.D. Cal. 2014) (same); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 WL 4684429 (C.D. Cal. Sept. 19, 2014) (same); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (same); *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446 (D. Del. Sept. 3, 2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (same); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (same); *Cardpool Inc. v. Plastic Jungle, Inc.*, No. C. 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) (same); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, 21 F. Supp. 3d 758, 764, 766-67 (E.D. Tex. 2014) (Davis, J.) (granting Rule 12(c) motion).

steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains such an abstract idea, the court evaluates whether there is an "'inventive concept' – *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id.* at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). In the context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'") (citation omitted). In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 130 S. Ct. at 3230-31; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## IV.  ARGUMENT

Each claim of the Asserted Patents is directed to the abstract idea of encoding and/or decoding data. And as the Federal Circuit has repeatedly found, analyzing, storing, or transmitting data do not make an otherwise abstract idea any less abstract. *Electric Power*, 830 F.3d at 1353-54; *RecogniCorp*, 2017 WL 1521590, at *3 ("***Adding one abstract idea [ ] to another abstract idea (encoding and decoding) does not render the claim non-abstract***."); *FairWarning IP, LLC v. Iatric Systems, Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016). Further, no claim here recites an inventive application of the abstract idea.

Thus, the claims of the Asserted Patents are invalid under § 101. Invalid patent claims cannot give rise to liability for patent infringement, and the Court should therefore dismiss Realtime's Complaint under Rule 12(b)(6).

### A.  Realtime Can No Longer Feign the Need for Claim Construction.

The Court has ordered or Realtime has otherwise agreed to or proposed the following constructions of terms in the Asserted Claims[6]:

| Claim | Construction |
|---|---|
| '530 Patent | |
| 1. A system comprising:<br>a memory device; and<br>a data accelerator,<br>wherein said data accelerator is coupled to said memory device, a data stream is received by said data accelerator in received form, said data stream includes a first data block and | **Markman Order** (*Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order); Dkt No. 417 (November 1, 2016 Order Adopting Claim Construction))<br><br>"data accelerator" = hardware or software with one or more compression encoders<br><br>"descriptor" = no construction necessary |

---

[6] Carbonite notes that it was not party to or involved in any of the claim construction proceedings identified herein. Nonetheless, while Carbonite reserves it right to construe and seek construction of the claims asserted against it, Carbonite relies on the constructions from the other proceedings for purposes of this motion.

| a second data block, said data stream is compressed by said data accelerator to provide a compressed data stream by compressing said first data block with a first compression technique and said second data block with a second compression technique, said first and second compression techniques are different, said compressed data stream is stored on said memory device, said compression and storage occurs faster than said data stream is able to be stored on said memory device in said received form, a first data descriptor is stored on said memory device indicative of said first compression technique, and said first descriptor is utilized to decompress the portion of said compressed data stream associated with said first data block. | **Agreed by Realtime** (*Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order), pp. 39-40)<br><br>"memory device" = an identified memory device to which data is directed for recording and later retrieval<br><br>"compressing"/"compressed"/"compression" = representing/represented/representation of data with fewer bits<br><br>"data stream is received" = one or more blocks transmitted in sequence from an external source whose characteristics are not controlled by the data encoder or decoder<br><br>"in received form" = receiving from an external source one or more data blocks<br><br>"data" = a representation of information<br><br>"data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files<br><br>**Agreed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 (January 17, 2017 Joint Claim Construction and Prehearing Statement), Ex. A))<br><br>"data" = a representation of information<br><br>"memory device" = an identified memory device to which data is directed for recording and later retrieval<br><br>"in received form" = receiving from an external source one or more data blocks<br><br>"data stream is received" = one or more blocks transmitted in sequence from an external source whose characteristics are not controlled by the data encoder or decoder<br><br>"data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files<br><br>**Proposed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 (January 17, 2017 Joint Claim Construction and Prehearing Statement), Ex. A))<br><br>"provide a compressed data stream by compressing said first data block with a first compression technique and |

| | |
|---|---|
| | said second data block with a second compression technique" = no construction necessary |
| | "the first descriptor is utilized to decompress" = no construction necessary |
| | **Agreed by Realtime** (*Realtime Data LLC v. Rackspace USA, Inc. et al.*, EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim Construction Chart), Ex. A) |
| | "data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files |
| | "data stream" = one or more data blocks transmitted in sequence |
| | **Proposed by Realtime** (*Realtime Data LLC v. Rackspace USA, Inc. et al.*, EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim Construction Chart), Ex. A)) |
| | "decompress" = decode compressed data |
| **'908 Patent** | |
| 1. A system comprising:<br><br>a memory device; and<br><br>a data accelerator configured to compress:<br><br>(i) a first data block with a first compression technique to provide a first compressed data block; and<br><br>(ii) a second data block with a second compression technique, different from the first compression technique, to provide a second compressed data block;<br><br>wherein the compressed first and second data blocks are stored on the memory device, and the compression and storage occurs faster than the first and second data blocks are able to be stored on the memory device in uncompressed form. | **Markman Order** (*Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order); Dkt No. 417 (November 1, 2016 Order Adopting Claim Construction))<br><br>"data accelerator" = hardware or software with one or more compression encoders<br><br>**Agreed by Realtime** (*Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order), pp. 39-40)<br><br>"memory device" = an identified memory device to which data is directed for recording and later retrieval<br><br>"compressed"/"compression" = represented/representation of data with fewer bits<br><br>"data" = a representation of information<br><br>"data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files<br><br>**Agreed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 |

|  | (January 17, 2017 Joint Claim Construction and Prehearing Statement), Ex. A)) |
|---|---|
|  | "data" = a representation of information |
|  | "memory device" = an identified memory device to which data is directed for recording and later retrieval |
|  | "data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files |
|  | **Proposed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 (January 17, 2017 Joint Claim Construction and Prehearing Statement), Ex. A)) |
|  | "compress: (i) a first data block with a first compression technique to provide a first compressed data block; and (ii) a second data block with a second compression technique, . . . , to provide a second compressed data block" = no construction necessary |
|  | **Agreed by Realtime** (*Realtime Data LLC v. Rackspace USA, Inc. et al.*, EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim Construction Chart), Ex. A)) |
|  | "data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files |
| **'728 Patent** | |
| 1. A system for compressing data comprising; <br><br> a processor; <br><br> one or more content dependent data compression encoders; and <br><br> a single data compression encoder; <br><br> wherein the processor is configured: <br><br> to analyze data within a data block to identify one or more parameters or attributes of the data wherein the analyzing of the data within the data block to identify the one or more parameters or attributes of the data excludes analyzing based solely on a descriptor that is indicative of the one | **Agreed by Realtime** (*Realtime Data, LLC v. Oracle America, Inc., et al.*, EDTX Case No. 6:16-cv-88, Dkt. No. 83 (October 28, 2016 Memorandum Opinion and Order), p. 10) <br><br> "single data compression encoder" = one data compression encoder <br><br> **Agreed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 (January 17, 2017 Joint Claim Construction and Prehearing Statement), Ex. A)) <br><br> "excludes analyzing based solely on a descriptor" = the analysis cannot be based solely on a descriptor <br><br> **Proposed by Realtime** (*Realtime Data LLC v. Dell Inc., et al.*, EDTX Case No. 6:16-cv-00089, Dkt. No. 109 (January 17, 2017 Joint Claim Construction and |

| | |
|---|---|
| or more parameters or attributes of the data within the data block;<br><br>to perform content dependent data compression with the one or more content dependent data compression encoders if the one or more parameters or attributes of the data are identified; and<br><br>to perform data compression with the single data compression encoder, if the one or more parameters or attributes of the data are not identified. | Prehearing Statement), Ex. A))<br><br>"perform content dependent data compression" = no construction necessary<br><br>"encoder" = hardware and/or software that performs data compression<br><br>"analyze data within a data block" = "analyze" means directly examine; no further construction necessary<br><br>"a processor . . . wherein the processor is configured" and three functional elements included = no construction necessary<br><br>**Agreed by Realtime** (*Realtime Data LLC v. Rackspace USA, Inc. et al.*, EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim Construction Chart), Ex. A)<br><br>"data block" = a single unit of data, which may range in size from individual bits through complete files or collection of multiple files<br><br>"content dependent data compression" = compression algorithm that is applied to input data that is not compressed with content independent data compression, the compression using one or more encoders selected based on the encoder's (or encoders') ability to effectively encode the data type or content of the data block<br><br>**Proposed by Realtime** (*Realtime Data LLC v. Rackspace USA, Inc. et al.*, EDTX Case No. 6:16-cv-961, Dkt. No. 148 (April 19, 2017 Joint Claim Construction Chart), Ex. A))<br><br>"processor" = no construction necessary<br><br>"analyze data within a data block" = "analyze" means directly examine; no further construction necessary |

The '204 Patent has not yet been subject to claim construction proceedings, but Carbonite submits that the terms in asserted claim 12 are similar to those in the above listed claims from the other Asserted Patents. To illustrate, for example, Carbonite juxtaposes the recited general and abstract steps of "recognizing any characteristic, attribute, or parameter of the data" and "selecting an encoder associated with the recognized characteristic, attribute, or parameter of the

data" in claim 12 of the '204 Patent with the Court's order of "no construction necessary" in the

*v. Actian* and *v. Oracle* cases (with respect to U.S. Patent No. 8,643,513 (not asserted here) and

the '728 Patent):

| Claim language | Construction |
|---|---|
| "recognition of any characteristic, attribute, or parameter that is indicative of an appropriate content dependent algorithm" ('513 Patent, claims 1, 15) | **Markman Order** (*Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No. 6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order); Dkt No. 417 (November 1, 2016 Order Adopting Claim Construction))<br><br>No construction necessary |
| "one or more encoders are associated with the one or more parameters or attributes of the data" ('728 Patent, claim 24) | **Markman Order** (*Realtime Data, LLC v. Oracle America, Inc., et al.*, EDTX Case No. 6:16-cv-88, Dkt. No. 83 (October 28, 2016 Memorandum Opinion and Order))<br><br>No construction necessary |

The above constructions, to which Realtime is bound, do not save the Asserted Claims

from being found ineligible under § 101. Carbonite submits that ***the constructions actually***

***compel a finding of ineligibility***. The constructions either point to the plain and ordinary

meaning of the terms as recited or define generic, conventional, and/or abstract claimed

computing elements as generic, conventional, and/or abstract computing elements.

For example, the term "data accelerator" has been construed as "hardware or software

with one or more compression encoders," rejecting other defendants' proposals to include more

specific computing elements (one or more encoders, one or more decoders, and associated input

and output buffers, input and output counters, compression ratio modules, and

descriptor/extraction modules). *Realtime Data, LLC v. Actian Corp., et al.*, EDTX Case No.

6:15-cv-463, Dkt. No. 362 (July 28, 2016 Memorandum Opinion and Order), pp. 21-26). In

addition to being defined with the generic computing construct of "hardware or software",

routine data encoding is merely the manipulation of information and has been found by the Federal Circuit to be an abstract concept. *See, e.g.*, *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 2017 WL 1521590, at *3 (Fed. Cir. Apr. 28, 2017). The same analog can be drawn to the constructions of the other terms in the Asserted Claims. In other words, the constructions reject specific, meaningful limitations (much on the urging of Realtime) and do not confer any non-abstractness or inventiveness that can survive scrutiny under § 101. Further, as further discussed below, components or elements argued to be limited to the digital environment do not confer eligibility. *Mayo*, 132 S. Ct. at 1297-98, 1300-01 (emphasizing that prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the abstract idea to a particular technological environment) (citations omitted).

### B.      Step One: The Asserted Patents Are Directed to an Abstract Idea.

In the first step of the § 101 analysis, the Court must evaluate a claim on its face to determine to which concept the claim is drawn, and then ask whether that concept is abstract. *See Alice*, 134 S. Ct. at 2356. Such evaluation entails examining the claim as a whole to determine whether the claim's "character" or "focus" is that of an abstract idea. *See Electric Power*, 830 F.3d at 1353. Moreover, as Magistrate Judge Payne noted in a recent recommendation to render a patent ineligible (after denying a Rule 12(b)(6) / § 101 motion in an earlier case on the same patent on grounds that claim construction was necessary), the decisional mechanism of comparing a claim at issue to those assessed in past cases to determine § 101 eligibility is more ingrained now than was in 2015. *See My Health, Inc. v. Devilbiss Healthcare, LLC*, EDTX Case No. 2:16-cv-00535, Dkt. No. 66 (February 14, 2017 Report and Recommendation), p. 6 (citing *Amdocs (Israel) Ltd. V. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)).

Asserted claim 1 of the '728 Patent simply recites the combination of content-dependent and content-independent data compression. As discussed above, the Asserted Patents admit that

both were known and conventional forms of compression, and the Federal Circuit has made clear that standard encoding is directed to an abstract idea. *RecogniCorp*, 2017 WL 1521590, at *4 ("A process that started with data, added an algorithm, and ended with a new form of data was directed to an abstract idea."); *id*. at *3 ("organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept") (citing *Intellectual Ventures*, 850 F.3d at 1340–41). Claim 1 of the '728 Patent, nor its construction, provide any specificity on the manner or form of compression.

To the extent Realtime intends to argue that eligibility rests in the analysis of a data block to determine whether to perform content-dependent or content-independent compression, such analysis is part of the definition of performing content-dependent compression. In other words, because such compression is dependent on the data content, the data content has to be assessed prior to compression. Indeed, Realtime's own proposed construction for "analyze within a data block" is merely to "directly examine." "Directly examine" is even more abstract than "analyze," which the Federal Circuit has repeatedly emphasized is abstract. *See, e.g.*, *Electric Power*, 830 F.3d at 1354.

Asserted claim 1 of the '530 Patent and asserted claim 1 of the '908 Patent focus on "a data accelerator" that uses two "different" compression techniques without claim language directed to content-dependent or content-independent compression. The claims do not speak to how the compression techniques are "different." Further, as discussed above, "data accelerator" has been generically construed as "hardware or software with one or more compression encoders." Hence, the focus of these claims, like claim 1 of the '728 Patent, are conventional forms of data encoding/compression, which the Federal Circuit has found to be an abstract idea.

As to the claimed "descriptor" in claim 1 of the '530 Patent, the Court ordered that term requires no construction. As recited in the claim, the "descriptor" is stored to identify a form of

compression used so that in turn the "descriptor" can be used to decompress the compressed data. Accordingly, the recited "descriptor" does not meaningfully change the nature of the claim's focus on conventional data compression.

As to the '204 Patent, asserted claim 12's recitation of "recognizing any characteristic, attribute, or parameter of the data" to perform content-dependent compression is abstract for at least the reasons provided above with respect to claim 1 of the '728 Patent. Further, as to "transmitting the compressed data," the Federal Circuit has repeatedly found that transmission of information, without more, is an abstract concept. *See, e.g.*, *In re TLI Communications LLC Patent Litigation*, 823 F.3d 607, 609 (Fed. Cir. 2016) (finding ineligible claim reciting transmission of information to a server).

In view of the above and as further supported in the two subsections below, the Asserted Claims are all directed to an abstract idea. Nothing in the claims, particularly in view of how they have been construed (in large part as advocated by Realtime), advance meaningful or specific limitations that change the character of the claims beyond conventional data encoding.

### 1.      *Being Limited to the Digital Domain Does Not Save the Asserted Patents.*

Notwithstanding that the Asserted Claims do not recite "digital" and have not been construed with the term "digital" by order or agreement (despite Realtime's machinations otherwise in opposition to prior § 101 motions), Realtime has argued that because the claimed compression is performed on digital data that cannot be read by humans, such compression is not abstract due to being "necessarily rooted in computer technology" under *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014). However, while Realtime decried earlier defendants' "oversimplification" of the claims, the truly stark generalization would be Realtime continuing to argue that *DDR* stands for the precedent that a claim on digital technology cannot

be ineligible under § 101. That is not the law.

Mere manipulation of information, regardless of whether digital or not, and regardless of whether the manipulation is faster or more efficient because it is performed on a computer, is abstract. Indeed, various Federal Circuit decisions have found ineligible claims on digital technology. *See, e.g.*, *Intellectual Ventures*, 850 F.3d at 1338 (finding ineligible claims on dynamically managing XML files: "a specialized mark-up computer language . . . that defines a set of rules for encoding documents in . . . **machine-readable format**"); *In re TLI Communications*, 823 F.3d at 609 (finding ineligible patent relating to "an apparatus for recording of a **digital** image, communicating the **digital** image from the recording device to a storage device, and to administering the **digital** image in the storage device").

The Federal Circuit in *Intellectual Ventures*, for example, made clear that limiting a claimed invention to a technological environment – the digital domain – for which to apply the underlying abstract concept – data compression – "do[es] not make an abstract concept any less abstract under step one [of *Alice*]." *See Intellectual Ventures*, 850 F.3d at 1340; *RecogniCorp*, 2017 WL 1521590, at *3 ("organizing, displaying, and **manipulating data encoded for** human- and **machine-readability is directed to an abstract concept**") (citing *Intellectual Ventures*, 850 F.3d at 1340-41).

Moreover, Realtime has argued that because the claimed compression is on digital data, the problems addressed by the Asserted Patents could not have existed in the pre-computer world and thus eligibility is conferred under *DDR*. But *DDR* expressly stated that "[w]e caution, however, that not all claims purporting to address Internet-centric challenges are eligible for patent." *DDR Holdings,* 773 F.3d at 1258. The Federal Circuit explained that a solution to a problem unknown prior to the Internet is not eligible where the solution itself is abstract. *Id*. Here, the routineness, conventionality, and hence abstractness of digital data compression is no

more evident than through the very words of the Asserted Patent themselves. *See, e.g.*, '728

Patent, col. 1, ll. 39-41 ("Information may be represented in a variety of manners. Discrete

information such as text and numbers are ***easily represented in digital data***."); col. 2, ll. 1-3

("***Data compression is widely used*** to reduce the amount of data required to process, transmit, or

store a given quantity of information."); col. 3, ll. 1-2 ("***there are many conventional content***

***dependent techniques*** that may be utilized"). *See also RecogniCorp*, 2017 WL 1521590, at *3

(finding non-specific data encoding and decoding to be abstract).

### 2.    *The Claimed Functions/Results Do Not Save the Asserted Patents.*

A patent claim that recites a solution to a problem but not the means of achieving it is not

drawn to patent-eligible subject matter. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1244 (Fed.

Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016);

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 917 (Fed.

Cir. 2015), cert. denied, 136 S. Ct. 2390 (2016). Such a claim is drawn to an abstraction. Rather

than disclose a concrete solution, the claim seeks to monopolize the very idea of a solution. *Alice*

*Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

Here, asserted claim 1 of the '530 Patent and asserted claim 1 of the '908 Patent recite

that compression and storage occurs "faster than" the data could be stored in uncompressed

form. Similarly, asserted claim 12 of the '204 Patent recites that data compression at a ratio of

4:1+ and transmission occurs in "less than a time" it would take to transmit the data in an

uncompressed form.

These elements of the claims relating to the speed or result of compression are simply

intended results without any meaningful support recited in the claims as to how those results are

achieved. In other words, the claims are silent on how the "faster than"-related limitations are

performed – they only require that they are performed. No process is specified for achieving the

claimed speeds. Hence, each of these claimed functions or objectives is simply a result, untethered to any "inventive means of achieving the result." *Electric Power*, 830 F.3d at 1351. "The purely functional nature of the claim confirms that it is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs*, 838 F.3d at 1269; *Electric Power*, 830 F.3d at 1356 (This "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101.").

Accordingly, the claims of the Asserted Patents recite generic, result-oriented functions with no limiting detail to confine the claims to any concrete embodiment of these functions – no particular encoder structure, no inventive compression techniques, and no innovative means of storage or transmission. Ultimately, "[t]hough lengthy and numerous," Realtime's claims go no further than "stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Electric Power*, 830 F.3d at 1351. The Federal Circuit has repeatedly rejected such result-focused claims as "do[ing] no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution." *Affinity Labs*, 838 F.3d at 1269; *Internet Patents Corp. v. Active Network*, *Inc*., 790 F.3d 1343, 1348 (Fed. Cir. 2015) (invalidating claims to a result with "no restriction on how the result is accomplished"); *Apple*, 842 F.3d at 1241, 1244-45 (invalidating claims, including those directed to "voice capture," because they "merely claim the resulting systems" without "a particular way of programming or designing the software to create" them). Thus, the functional limitations in the claims of the Asserted Patents do not change the conclusion that they are drawn to an abstract idea.

### C.     Step Two: There is No "Inventive Concept."

The second step in the § 101 analysis requires a court to determine whether a claim

recites one or more additional elements that "transform the nature of the claim" from abstract to non-abstract, so as to render it eligible for patent protection. *Mayo*, 132 S. Ct. at 1297.

The claims of the Asserted Patents recite no "specific technical solution." The only tangible elements recited in the claims identified in the Complaint are "a processor" ('728 Patent, claim 1), "a memory device" ('530 Patent, claim 1;'908 Patents, claim 1), and encoders (all[7]). Plainly, the processor and memory are generic computer components. *See Alice*, 134 S. Ct. at 2360 ("Nearly every computer will include a 'communications controller' and 'data storage unit' capable of performing the basic calculation, storage, and transmission functions required by the method claims."). As such they are "insufficient to add an inventive concept to an otherwise abstract idea." *In re TLI Communications*, 823 F.3d at 614 (citing cases).

The claim elements relating to encoders are similarly non-inventive. The Asserted Patents admit that none of the compression techniques used by the encoders were new as of the listed priority dates. *See, e.g.*, '728 Patent, col. 7, ll. 3-17 ("The encoder set E1, E2, E3 . . . En may include any number 'n' of those lossless encoding techniques ***currently well known within the art***); '908 Patent, col. 11, l. 6 – col. 12, l. 5 (same); '204 Patent, col. 15, ll. 11-17 (same). And the Asserted Patents and their claims provide no detail at all regarding the structure of the encoders themselves – to the contrary, the encoders are described as any combination of "hardware, software, [or] firmware." '728 Patent, col. 6, ll. 30-32 ("the present invention may be implemented in various forms of hardware, software, firmware, or a combination thereof"); '908 Patent, col. 4, ll. 47-50 (same); '204 Patent, col. 8, ll. 3-5 (same). Nothing in the specifications goes beyond a functional, black-box disclosure for any of the encoder elements. *See In re TLI Communications*, 823 F.3d at 615 ("the specification limits its discussion of these components to

---

[7] Noting that "data accelerator" in claim 1 of the '530 Patent and claim 1 of the '908 Patent has been construed as "hardware or software with one or more compression encoders."

abstract functional descriptions devoid of technical explanation as to how to implement the invention."). The encoder elements thus fail to limit the claims "to a specific technical solution of the abstract idea." *Bascom Glob. Internet Servs.*, *Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016).

**D.     The Remaining Independent and Dependent Claims are Ineligible for the Same Reasons.[8]**

Realtime's identification of certain claims from the Asserted Patents in its Complaint invites the Court to focus on those claims to determine eligibility under § 101. *See, e.g.*, *Electric Power*, 830 F.3d at 1351-52, n.1 (evaluating a representative claim for the asserted claims of the three patents-in-suit). In another case, for example, the Federal Circuit found no error in the district court's decision to evaluate the eligibility of 242 claims across four patents based on its analysis of two representative claims, even where the parties had not agreed beforehand on the set of representative claims. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). The Federal Circuit determined that it was "unnecessary" for the district court to address each claim individually to perform its analysis. *Id.* at 1347-48. The same is true in this case.

Even if the claims Realtime has not identified are considered, however, none adds any non-abstract or inventive concept sufficient to satisfy § 101. The non-identified independent claims are largely analogous to the identified claims discussed above. *See* '728 Patent, claims 24 and 25 (reciting limitations analogous to those of identified claim 1); '530 Patent, claim 24 (analogous to identified claim 1); '908 Patent, claims 21 and 25 (analogous to identified claim 1), claim 29 (decompression method with limitations symmetric to those of claim 1); '204

---

[8] This subsection is largely identical to that contained in Section III.C.(ii) of Commvault's pending Rule 12(b)(6) / § 101 motion. *Realtime Data LLC v. Commvault Systems Inc., et al.*, EDTX Case No. 6:17-cv-00123, Dkt. No. 22.

Patent, claims 1 and 22 (analogous to identified claim 1). And the dependent claims recite only desired results, conventional computer components and techniques, or characteristics of information. For example, certain dependent claims recite the desired results of steps such as compressing, decompressing, or storing data, but fail to provide any detail regarding how those steps are performed. Others recite standard components of network and computing devices or conventional computing techniques. A final group recites particular types of information.

The first set of dependent claims, those that recite desired results, are ineligible for the reasons discussed above with respect to Realtime's identified independent claims. Claims that "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem" are "directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs*, 838 F.3d at 1269. Some of the dependent claims recite simply storing data in memory, but recite no particularized memory components or steps for performing the storage. *See* '728 Patent, claim 15 (storing data); '908 Patent, claims 2-6 (storing information in/retrieving information from memory); '530 Patent, claims 1-5 (same). Other claims relate to using descriptors to identify a type of data or compression, but fail to recite any details of how the descriptor-data association is achieved. *See* '728 Patent, claims 9-10, 11, 19, 20 (using identifiers to associate data types with encoders); '530 Patent, claim 25 (adding a compression type descriptor to data); '908 patent, claim 27 (adding a compression type descriptor to data). Still others merely recite analyzing data. '204 Patent, claims 11, 21 (analyzing data based on attributes other than a descriptor).

Some dependent claims recite compressing data, passing it through uncompressed, or decompressing it – but fail to define how the compression, decompression, or other processing is performed. *See* '728 Patent, claims 16-17 (passing data through uncompressed); '204 Patent, claims 3, 13 (decompressing data), claim 18 (compressing data). Claim 26 of the '530 Patent and

claim 26 of the '908 Patent recite determining a bandwidth / data rate value and adjusting system parameters to match that value, but the claim provides no detail whatsoever about how the parameters are adjusted (or, indeed, what the parameters actually are). And finally, some of the claims simply recite performing the functions of the independent claims more quickly. *See* '728 Patent, claim 18 (compressing, transmitting, decompressing data quickly); '908 Patent, claims 7, 23, 28 (retrieving, decompressing data quickly); '204 Patent, claim 2 (compressing, transmitting data quickly). Again, these claims provide no detail as to how the claimed functions are performed in a faster manner. Limitations such as these have been uniformly held to fail the second step of the *Alice* test. *See, e.g.*, *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) ("[W]hen a claim directed to an abstract idea 'contains no restriction on how the result is accomplished . . . ,' then the claim is not patent-eligible.") (citation omitted); *Ultramercial*, 772 F.3d at 716 ("[C]onventional steps, specified at a high level of generality, [are] insufficient to supply an inventive concept.") (citation omitted).

The second set of dependent claims relates to conventional computing components and techniques. Certain claims recite known networking and storage components. *See* '908 Patent, claim 8 (connection equipment used to couple data accelerator and memory); '530 Patent, claims 6-8 (same), claims 9-12 (various types of memory). These are precisely the type of "off-the-shelf" computer components that cannot supply an inventive concept. *Electric Power*, 830 F.3d at 1355. Other claims recite using known compression techniques or transmission protocols. *See* '728 Patent, claims 4-8 (real-time compression), claims 12-14, 21-23 (lossy/lossless compression); '908 Patent, claims 9-11, 15, 20, 24, 30 (dictionary/Lempel-Ziv encoding), claims 12-13 (serial/parallel encoder configurations), claim 14 (a "third" compression technique), claims 16, 17 (real-time/not real-time); '530 Patent, claim 13 (Huffman encoding), claim 14 (Lempel-Ziv encoding), claims 15-17 (serial/parallel encoder configurations); '204 Patent,

claims 8, 18, 28 (lossy compression), claims 9, 19, and 29 (UDP transmission). The Asserted Patents make clear that all of these claimed compression techniques and transmission protocols were well-known in the art. *See, e.g.*, '728 Patent, col. 7, ll. 14-16 (Huffman, Lempel- Ziv, dictionary compression known); '908 Patent, col. 12, ll. 2-4 (same); '204 Patent, col. 15, ll. 14-17 (same); '728 Patent, col. 2, ll. 3-6 (lossy/lossless compression known); '908 Patent, col. 1, ll. 53-56 (same); '204 Patent, col. 9, ll. 26-29 (UDP protocol known). Such references to generic and existing technologies cannot supply an inventive concept. *See, e.g.*, *Apple*, 842 F.3d at 1245 (claims that "refer[red] to the use of . . . voice capture technologies without providing how these elements were to be technologically implemented" were non-inventive).

A final set of dependent claims specify types or characteristics of information. *See* '728 Patent, claims 2 and 3 (format of the data block); '908 Patent, claims 18 and 19 (characteristics of the input data); '530 Patent, claims 19-23 (same); '204 Patent, claims 4-7, 14-17, 23-27 (same). But "[i]nformation as such is an intangible," and simply limiting information "to particular content (which does not change its character as information)" does nothing to provide an inventive concept. *Electric Power*, 830 F.3d at 1353; *id.* at 1355 ("merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes").

In sum, none of the dependent claims supplies any non-abstract or inventive concept that would satisfy § 101.

## V.    CONCLUSION

In view of the above, it is apparent that the claims of the Asserted Patents (i) are directed to standard encoding and decoding, which the Federal Circuit in at least *RecogniCorp* and *Intellectual Ventures* emphasizes is the abstract manipulation of information (regardless of whether the information is digital), (ii) recite only other abstract concepts (*e.g.*, data analysis/storage/transmission) in conjunction with abstract data encoding, (iii) recite no more than generic computing elements, and (iv) rest on function without any inventive limits on achieving the recited function. Thus, because the claims of the Asserted Patents do not embrace patentable subject matter under § 101, Carbonite respectfully requests that the Court dismiss this case with prejudice for failure to state a claim upon which relief can be granted.

Dated: May 9, 2017

Respectfully submitted,

By: */s/ Wasif H. Qureshi*
Wasif H. Qureshi
Texas State Bar No. 24048155
wqureshi@jw.com
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, Texas  77010
Telephone:  (713) 752-4521

**COUNSEL FOR DEFENDANT
CARBONITE, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 9, 2017, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Wasif Qureshi*
Wasif Qureshi